IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD KOVAC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-cv-00400 |
| | ) | |
| PENNSYLVANIA TURNPIKE COMMISSION, MITCHELL RUBIN, GEORGE HATALOWICH, MELVIN SHELTON, and MARK ROWE, | ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Presently before the Court are the MOTION FOR SUMMARY JUDGMENT (Document No. 45) filed by Defendants Pennsylvania Turnpike Commission, Mitchell Rubin, George Hatalowich, and Melvin Shelton (the "Commission Defendants") and the MOTION FOR SUMMARY JUDGMENT (Document No. 48) filed by Defendant Mark Rowe. The Defendants have filed briefs in support of their respective motions and Plaintiff has filed a brief in opposition (Document Nos. 46, 48, 52, 56). The parties have also fully developed their respective positions through Defendants' Concise Statements of Material Facts and Plaintiff's Additional Material Facts (47, 49, 54, 55, 57, 58) and responses thereto, and have submitted numerous exhibits. The motions are ripe for disposition.

**BACKGROUND**

From April 2005 until November 20, 2008, Kovac was employed as a Manager of Labor Relations by the Pennsylvania Turnpike Commission ("PTC"), which is an independent commission organized under Pennsylvania law. Defendant Rubin was at all relevant times the Chairman and one of three voting members of the PTC. The other two voting members of the PTC are not named as Defendants in this case. Defendant Hatalowich was the Chief Operating Officer of the PTC. Defendant Shelton was a managerial employee of the PTC, who also served as a Democratic Ward Chairman in Philadelphia. Defendant Rowe was the "Business Agent" of Teamsters Union Local No. 77.

Kovac was hired in 2005 by Joseph Brimmeier, the Chief Executive Officer of the PTC, in the wake of a strike by turnpike workers on Thanksgiving Eve, 2004 – the busiest travel day of the year. Kovac's mission was to re-establish confidence and trust between management and the union and to finalize a new collective bargaining agreement. Kovac also served as a hearing officer to resolve grievances filed by union employees under the collective bargaining agreement. Kovac officially reported to Patricia Schlegel, the Director of Human Resources of the PTC. Kovac admits that Schlegel conducted his performance evaluations, but contends that Schlegel was merely his "nominal" supervisor and that in actuality, he reported to Brimmeier.[1]

Plaintiff alleges that he engaged in the following constitutionally-protected activities: (1) he exhibited a lack of deference and loyalty to Teamsters Local Union 77 ("Local 77"), United States Congressman Robert Brady, and the Philadelphia Democratic Party patronage system; (2) he refused demands from Defendants Rowe and Shelton to give special treatment to grievances filed by Local 77 members; (3) in particular, in early-2008, he refused to accede to Rowe's

---
1 Brimmeier is not a named defendant in this case.

demand for the re-instatement of Christopher O'Reilly, a toll-taker who had been fired in June 2007 after getting into an altercation with a motorist; and (4) at unspecified date(s), he notified Brimmeier that Defendant Shelton performed little work, misused a PTC vehicle, fuel and EZ Pass to chauffeur Congressman Brady, and sold tickets to Philadelphia Democratic fundraising events. In essence, Plaintiff's theory is that because he refused to cooperate with the demands of Rowe and Shelton (on behalf of Local 77 and the Philadelphia Democratic machine), they conspired to engineer the termination of his employment.

In the autumn of 2008, the PTC experienced a substantial reduction in fares as a result of a downturn in the national economy. It became an operational imperative to reduce the PTC's budget. All department heads, including Schlegel, were instructed to cut their budgets by as much as ten percent (10%). As a first step, non-personnel measures were implemented, including reductions in conferences, travel, training and purchases. Such austerity measures were insufficient, so the PTC implemented a "voluntary departure program" to encourage early retirement. The number of employees who chose to retire proved inadequate to bridge the budgetary shortfall. Accordingly, in November 2008, fifteen non-union employees were laid off – including Kovac.

Schlegel submitted a Declaration in which she stated that she made the decision to eliminate Kovac's job. Schlegel explained that her decision was based on the mandate to reduce her budget in a manner that would cause the least amount of disruption to the overall operation. In Schlegel's opinion, Kovac was one of the most highly-paid members of her staff; Kovac was less productive than the other hearing officer, Patrick Caro; and Kovac's performance evaluations had deteriorated over time. In particular, Kovac was evaluated as needing to improve his "dependability," as he had failed to keep Schlegel informed of his whereabouts and failed to show

up for work at the Central Office in Middletown, as required. Kovac was informed of the decision to terminate his employment on November 20, 2008. Kovac criticizes the manner in which he received notice (a state policeman pulled Kovac over as he was driving on the turnpike and instructed him to call PTC headquarters). On November 25, 2008, the staff reductions were approved by the three voting members of the PTC, including Defendant Rubin.

The Amended Complaint asserts two claims pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was unlawfully terminated from his employment in retaliation for: (1) his political affiliation (or lack thereof) (Count I) and/or (2) his exercise of the right of free speech (Count II). The Court granted the parties' Stipulation of Dismissal as to Plaintiff's claim under the Pennsylvania Whistleblower Law, 43 Pa. C.S. § 1421 *et seq.* (Count III).

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

### DISCUSSION

The two legal theories articulated by Kovac have similar elements. To establish a claim for retaliation based on political activity, a plaintiff must establish: "(1) that the employee works

for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." *Goodman v. Pennsylvania Tpk. Comm'n,* 293 F.3d 655, 663-64 (3d Cir. 2002) *(citing Rutan v. Republican Party of Ill.,* 497 U.S. 62 (1990)). Taking an adverse employment action based on a person's political tendencies constitutes a violation of that person's First Amendment rights. *Id.* This protection extends to "government employees who lack a political affiliation" or who are apolotical. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 268 (3d Cir. 2007).

To state a viable First Amendment retaliation claim, a plaintiff must allege that (1) the activity in question is protected by the First Amendment and (2) the protected activity was a substantial factor in the alleged retaliatory action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). In the context of public employment, an employee's speech is protected when (1) the employee is speaking as a citizen and not pursuant to his or her official responsibilities; (2) the statement involves a matter of public concern; and (3) the government employer is not justified in treating the employee differently from a member of the public because of his or her statement. *Id.* at 241-42 (citations omitted).

Under either retaliation theory, Plaintiff must establish as part of the prima facie case that his alleged protected activity was a "substantial or motivating factor" in his termination. In *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267-68 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained that courts must diligently enforce this causation requirement:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking

6

action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

As pertinent to the circumstances of this case, the *DeFlaminis* Court further commented: "We also are aware that in employment situations employees sometimes threaten to bring retaliation actions if the employer takes adverse action with respect to them." *Id.* at 268 n.8. In summary, the Court of Appeals has recognized the difficulties faced by public employers who are forced to lay off workers and has instructed the district courts to rigorously require the plaintiff to prove that he/she was terminated for an improper purpose.

> Turning to the standard necessary to prove a causal link, the *DeFlaminis* Court explained:
>
> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503-04 (3d Cir.1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

In *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 795 (3d Cir. 2000), the Court noted: "Where a reasonable inference can be drawn that an employee's speech was at least one factor considered by an employer in deciding whether to take action against the employee, the question

of whether the speech was a motivating factor in that determination is best left to the jury." On the other hand, even if a plaintiff is able to establish a prima facie case of causation, the employer may prevail by demonstrating that it would have taken the same action (i.e., terminated Kovac's employment) even in the absence of the protected activity. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

Assuming, arguendo, that Plaintiff can establish all of the other elements of each prima facie case, Kovac has failed to establish that his alleged protected activity was a "substantial or motivating factor" in the loss of his job. It is uncontested that the PTC was facing a severe budget deficit in the fall of 2008, and that the PTC was embroiled in a series of cost-cutting measures. Kovac was not the only individual to lose his job – he was one of fifteen non-union employees whose jobs were eliminated in late November 2008. Indeed, Plaintiff agrees that some of these employees "may have been laid off for budgetary reasons." Plaintiff's Response to CSMF ¶ 14. Plaintiff contends that no budget was yet in place for fiscal year 2008-2009; that the actual budget remained flat; that the PTC added new jobs during that fiscal year; and that "equity adjustments" were made (to reflect changed duties). These arguments are entirely beside the point. It is undisputed that turnpike revenues had decreased and the PTC was facing a real financial crisis. The wisdom of the PTC's efforts to address that crisis will not be second-guessed by the Court. *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3d Cir.1997) (en banc) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [retaliation]"). It is sufficient that no reasonable jury could conclude that the PTC's cost-cutting efforts were an elaborate ruse or pretext to cover-up Kovac's allegedly unlawful termination.

8

In addition, Plaintiff has failed to introduce evidence from which a reasonable jury could find in his favor on the "cat's paw" or "subordinate bias" theory, i.e., that Rowe and Shelton engineered his termination through Rubin and Hatalowich. There are numerous gaps in the causal chain. The record reflects that Schlegel alone made the decision to eliminate Kovac's position, as part of her mandate to reduce the Human Resources budget in response to the financial crisis in November 2008. Schlegel Declaration; Hatalowich Deposition at 19. Kovac has submitted no contrary evidence – at the summary judgment stage, his averments in the Amended Complaint will not suffice. Fed. R. Civ. P. 56(e)(2). Schlegel declared that she was unaware of Kovac's political affiliation. Again, Kovac has introduced no evidence to the contrary. There is no evidence that Schlegel or Hatalowich had any interactions with Rowe and/or Shelton regarding Kovac's employment. Similarly, there is no evidence that Kovac's criticisms of Shelton were conveyed by Brimmeier to any of the Defendants. An "unusually suggestive temporal proximity" does not exist between Kovac's alleged protected activity and his termination. His criticisms of Shelton are undated and the record reflects that Patrick Caro (not Kovac) denied O'Reilly's initial grievance in July 2007 and Local 77 withdrew the grievance on January 11, 2008 – almost a year prior to the layoff. There is no evidence that Rubin made the actual decision to terminate Kovac, or had any role other than providing one of the three votes to officially approve the layoffs. There is no evidence that the other two voting members of the PTC were acting in retaliation against Kovac, such that the PTC would have taken the same action to terminate his employment even in the absence of Kovac's alleged protected activity. Indeed, Kovac has admitted that he has no evidence of the necessary causal link other than his opinion, supposition and conjecture. *See* Kovac Deposition at 124, 131.

In the Court's view, the real gravamen of Kovac's claim is that he disagrees with the PTC's

decision to terminate his employment. Schlegel articulated the following reasons for her decision to terminate Kovac: (1) in her opinion, the other hearing examiner, Patrick Caro, was more productive; (2) Kovac had a high salary, and thus, the elimination of his position would make a greater impact on the budget deficit; (3) Kovac failed to work out of the Central office as required; (4) Kovac failed to keep Schlegel informed of his whereabouts; (5) there had been instances of insubordination; and (6) in her opinion, this was the best way to address the budget shortfall with the least disruption to the functioning of the department. Kovac contends that he was an effective and productive employee and that Brimmeier, Hatalowich and Schlegel were "totally incompetent." This argument, even if true, is unavailing. It is not for the Court to second-guess the wisdom of an employer's business decision. *See Keller*, 130 F.3d at 1109. It is certainly unfortunate for Plaintiff that he lost his lucrative position with the PTC. However, there is no basis to conclude that Defendants terminated him in retaliation for engaging in protected activity.

## CONCLUSION

In summary, a reasonable jury could not conclude from this record that a "substantial or motivating reason" for Kovac's termination was due to retaliation by Defendants for Kovac's alleged protected activities. Evidence of the requisite causal link does not exist in this record. Accordingly, the motions for summary judgment filed by Defendants will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD KOVAC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:09-cv-00400 |
| | ) |
| PENNSYLVANIA TURNPIKE | ) |
| COMMISSION, MITCHELL RUBIN, | ) |
| GEORGE HATALOWICH, MELVIN | ) |
| SHELTON, and MARK ROWE, | ) |
| | ) |
| Defendants. | ) |

## ORDER OF COURT

**AND NOW**, this 15th day of December, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the MOTION FOR SUMMARY JUDGMENT (Document No. 45) filed by Defendants Pennsylvania Turnpike Commission, Mitchell Rubin, George Hatalowich, and Melvin Shelton (the "Commission Defendants") and the MOTION FOR SUMMARY JUDGMENT (Document No. 48) filed by Defendant Mark Rowe are hereby **GRANTED**.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Ronald D. Barber, Esquire
rbarber@smgplaw.com

Michael A. Farnan
mfarnan@farnanlawoffice.com

Peter H. Demkovitz
pdemkovitz@markowitzandrichman.com